BATES, REED & COOLEY ET AL. v. WILLS POINT BANK.

No. 820.

**1. Release of Joint Obligor or Partner—Effect.**

An action was brought against a partnership by creditors of an insolvent debtor to subject certain property fraudulently transferred by the debtor to such firm, and the plaintiffs agreed with one of the firm that no execution issued on the judgment therein should be levied against his property if he would not resist the suit and furnish the facts and papers relating to the transfer. Held, that such agreement did not have the effect of releasing the other partners.

**2. Injunction Against Judgment—Res Judicata.**

It is not ground for enjoining a judgment against a firm that one of the firm had been released, where the firm knew, or should have known, of such release at the time of the trial that resulted in the judgment.

Appeal from Van Zandt.    Tried below before Hon. Felix J. McCord.

*J. G. Kearby* and *Crawford & Crawford,* for appellants.—1.    Where the instrument relied upon as a release shows on its face that the rights of the creditor against the co-obligors is preserved, they are not discharged.    Hale v. Spaulding, 145 Mass., 482; Machine Co. v. Harmon, 45 Ark., 290; Kensworthy v. Sawyer, 125 Mass., 28; Kirchoff v. Voss, 67 Texas, 320.

2.    Though the word release be used even under seal, yet if the parties, the instrument being considered as a whole and in connection with all the circumstances of the case, and the relation of the parties, can not reasonably be supposed to have intended a release, it will be construed as only an agreement not to charge the party to whom it is given, and consequently will not release the other obligors.    1 Par. on Con., 28; Bishop Con., 870-71-72-73; Bonney v. Bonney, 29 Iowa, 448.

3.    An agreement not to sue one of several joint debtors does not injure the others.    It does not defeat the right of the others to compel contribution from the debtor holding the agreement.    Catskill Bank v. Messenger, 9 Cowan, 37; Frink v. Green, 5 Barb., 460.

4.    The execution of a judgment will not be enjoined when the grounds for the injunction existed before the rendition of the judgment, and were known or might have been known by the exercise of diligence.    Crawford v. Wingate, 25 Texas, 414; Clegg v. Darrah, 63 Texas, 361; Brown v. Hurd, 56 Ill., 318.

*Kearby & Muse,* for appellee.—1.    Where an instrument preserves the rights of creditors against co-obligors, they are discharged if the same is a fraudulent disguise for the release of one.    The absolute release of one co-obligor discharges the other.    Wills Point Bank v. Bates, Reed & Cooley, 76 Texas, 336-7, and authorities there cited.

2.    An agreement not to issue execution, etc., as against one co-obligor, is tantamount to an absolute release and discharge of the remaining co-obligors.    The written agreement between Williams and appellants is, in legal effect, the equivalent of a covenant never to sue, and an absolute release.    Graves v. Whiteside, 13 Ill., 7; Holland v. Marvin, 5 Cal., 501; Thurston v. James, 6 R. I., 103; Mullett v. Hayford, 1 Wis., 401; Harvey v. Harvey, 3 Ind., 473; Walker v. McCulloch, 4 Me., 421; Hastings v. Dickenson, 7 Mass., 153-5; Hastings v. Dickenson, 17 Mass., 623; Hastings v. Dickenson, 16 Mass., 245; Stebbins v. Nile, 25 Miss., 267; Garnett v. Mason, 6 Call (Va.), 308.

RAINEY, Associate Justice.—Gugenheim & Company, insolvent merchants, conveyed their property to the Wills Point Bank, a partnership composed of H. Fuller, W. A. Williams, J. M. Lybrand, and J. W. Fuller.    The appellants, Bates, Reed & Cooley, and other creditors of Gugenheim, attached said property and attacked said conveyance for fraud.    Said bank claimed the property under the statute.    Upon the

trial of the rights of property, all the creditors recovered judgment against the bank for the value of the property claimed, which in each case exceeded the value of the indebtedness due by Gugenheim & Company. The suit brought by K. Mandell & Co., one of the creditors, against Gugenheim & Company was dismissed, yet in the claim suit judgment was also entered against the bank and sureties in favor of said Mandell & Co. for $862.10.

In January, 1889, executions were issued on each of said judgments rendered in the claim suits and were by the sheriff levied upon real estate belonging to H. Fuller. The property was advertised for sale, when, on January 18, 1889, H. Fuller, J. M. Lybrand, and J. W. Fuller filed this suit in the District Court of Van Zandt County against the several judgment creditors, H. T. Blackwell, the sheriff, and W. A. Williams, for an injunction to restrain the sale, and for a perpetual injunction against the enforcement of the said judgments. In rendering the judgments in the claim suits, the same were entered for the value of the goods taken under the claim bonds, with interest and damages, without reference to the amounts due the various creditors upon their judgments against Gugenheim.

Under the terms of the co-partnership of the Wills Point Bank, W. A. Williams was entitled to one-third of the profits and was liable for one-third of the losses and is liable for one-third of the judgments rendered in the claim cases. Appellees alleged that prior to, at the time, and subsequent to the rendition of said judgments, W. A. Williams entered into a fraudulent conspiracy with the attaching creditors, that if he would appear at the trial of the claim suits and testify that the other members of the firm of the Wills Point Bank had told him that the sale of the goods from Gugenheim to the bank was unreal and in fact only a mortgage, that the said attaching creditors promised said Williams that if he would so testify, no execution which might issue on said judgments should be enforced against him. They charged that the contract was dated December 10, 1883, was in writing, and that while by its terms, it provided that no execution should issue against Williams, this language was used to disguise the real nature of the contract, which was that Williams should be absolutely discharged from all liability on said judgments, and that by said contract Williams was discharged from all liability on said claim bonds, or the judgments rendered in the claim suits. That Williams did appear and testify, and that the testimony was untrue. They alleged that the attachment creditors agreed with Williams to collect said judgments from H. Fuller and retain enough of the money to fully indemnify Williams for any contribution he might be required to make to the other members of the firm.

They claimed that the release of Williams is a release of the members of the firm, and that the fact that Williams had been released was unknown to them until after the rendition of the judgments. The contract between Williams and the attaching creditors was alleged to be in writing and defendants notified to produce it.

Appellees prayed, first, that the injunction be made perpetual; second, if this can not be done, then that appellants recover no more than two-thirds the value of the goods; third, that the collection of the entire claim of Mandell & Co. be enjoined; fourth, that not more than two-thirds of the judgments recovered by the attaching creditors against Gugenheim be collected from plaintiffs. The case was tried upon an amended original petition, filed October 30, 1893.

Defendants answered by demurrers and an answer to the merits. They admitted the institution of the attachment suits against Gugenheim and the filing of the claim bonds by the Wills Point Bank and the recovery of the judgments in the attachment and claim suits as alleged, and that no judgment was rendered in favor of K. Mandell & Co., against Gugenheim, and that the suit had been dismissed.

Appellants denied that they ever released W. A. Williams from the claim bonds or the judgments rendered thereon, or that they ever conspired with him to give false testimony upon the trial. They admitted that he was a witness, and gave evidence tending to show that the sale from Gugenheim to the bank was fraudulent, and that the evidence was true. They averred that in all the claim cases judgment was rendered against Williams as well as the other members of the firm. They averred that all the facts stated in the petition in reference to the discharge of Williams were known to the plaintiffs upon the trial of the Bates, Reed & Cooley case, which was a test case.

Upon the trial of said case Williams testified, in substance, that all the attaching creditors had agreed to hold him harmless and indemnify him against any loss by reason of said judgments; that this testimony was incorporated in the statement of facts upon appeal. That every objection urged against the judgments was presented and urged as a reason why the judgment of Bates, Reed & Cooley against the Wills Point Bank should be reversed. They also prayed that the injunction be dissolved, with ten per cent damages.

At the fall term of the court, 1889, the case was heard upon the exceptions, which were sustained and the petition dismissed. Upon appeal the case was reversed February 7, 1890 (76 Texas, 329). After the return of the mandate the case was again tried October 30, 1893, and resulted in a verdict and judgment for plaintiffs perpetuating the injunction, from which judgment this appeal is prosecuted.

*Opinion.*—On the former appeal the Supreme Court held that appellants could not collect by virtue of their judgment against the bank, a greater sum than the amount of their judgment against Gugenheim & Company, together with interest and costs, and that an injunction would lie to restrain the enforcement of the collection of the excess. It also held that the judgment in favor of K. Mandell & Co. was not valid, and should not be enforced. Bank v. Bates et al., 76 Texas, 329.

To that extent only the injunction should have been perpetuated. On these points we understand appellants make no contention.

The contention arises over the construction and effect of the agreement entered into between W. A. Williams and the creditors of Gugenheim & Co. The one made with appellants is identical with that made with the other creditors. It is as follows: "Memorandum of an agreement made by and between the plaintiffs, Bates, Reed & Cooley, on the one part, and W. A. Williams, one of the defendants, witnesses, that—

"Whereas, the plaintiffs desire to have no obstacle thrown in their way to have a fair and impartial trial in the above cause, and to have the benefit of all and every fact within the possession or knowledge of said defendant, Williams; and in consideration that the defendant, W. A. Williams, does not in anywise for himself defend or resist the plaintiffs' suit, and give to plaintiffs, Bates, Reed & Cooley, all facts and papers that he has in his possession relating to the matters at issue, then the plaintiffs agree and bind themselves to in nowise use or enforce any fi. fa. execution or writ, or any judgment that may be rendered in the above cause against the said W. A. Williams or his property, rights, or effects, it appearing to the parties that the property in question is amply sufficient to pay off and satisfy any judgment that may be rendered in said cause, and that W. A. Williams has never, nor does he now claim the said property or any part or parcel thereof, or any interest therein. December 10, 1883.                                 BATES, REED & COOLEY,
                                                By C. B. Kilgore, Attorney for Plaintiffs.
                                                                        W. A. WILLIAMS,
                                                    By Templeton, Wynne & Carter."

The meaning and purport of this contract is, to our minds, clear upon its face, and to give to the testimony of the witness its full force, it does not change or vary its meaning. We construe the contract to mean, that Williams disclaimed any right to the property conveyed by Gugenheim to the bank, that he would not defend against the bank's claim to the same, and that he would furnish to appellants such facts and papers relating to the matters at issue as were in his possession; the appellants on their part agreeing not to enforce any judgment that might be obtained against Williams. This, in effect, released Williams, individually, from any liability by virtue of said judgment. But what effect did this release have as to the other members of the firm? As Williams repudiated the transaction and disclaimed any interest in the property, and as the other partners in the bank had appropriated property exceeding in value appellants' claim, said release did not have the effect to release them from liability for the amount of the debt, interest and costs.

If the property received by the bank had not been sufficient to have paid appellants' claim, it does not follow that appellees would be discharged absolutely by such release.

The petition passed upon by the Supreme Court on the former appeal in this case alleged an absolute and unqualified release. The court said: "The doctrine seems to be well established, that such a release of one of a number of joint debtors discharges the others." Citing several

authorities, among which is Bridges v. Phillips, 17 Texas, 128, and upon which several decisions of our Supreme Court are based. In those cases where the above doctrine is announced, the court was discussing technical releases, that is, where one co-obligor was unqualifiedly released from the debt, and no reservation was made as to the other obligors. It is well settled that such a release discharges joint obligors, nor do the appellants herein controvert such doctrine.

Where, however, a release is given to one of several obligors, and a reservation of rights against the other obligors is inserted for that purpose, the other obligors are not released entirely, but are responsible for their proportionate part of the obligation. Hale v. Spaulding, 145 Mass., 483; 20 Am. and Eng. Enc. of Law, 750; 2 Daniel on Negotiable Instruments, sec. 1295.

It is evident from the release made between the parties, that appellants did not intend to release appellees from liability, but intended to prosecute their claim against them.

Mr. Daniels, in his work on Negotiable Instruments, Vol. 2, sec. 1291, lays down the rule, that a covenant not to sue, "does not discharge another who is jointly liable with the covenantee." The release here, we take it, is not stronger than a covenant not to sue, which, in effect, operates as an extinguishment of the debt as to "the covenantee."

The court was asked by appellants to charge, in substance, "That if Fuller and Lybrand, or either of them, knew of the agreement between Williams and the creditors of Gugenheim before the trial of the claim suits; or if they had such information as would put a reasonable man upon inquiry as to the existence of such an agreement, and failed to prosecute such an inquiry, that no issue could be raised in this case as to such agreement; that it was settled in the claim suits."

This charge was refused, and its substance was not given. H. Fuller and Lybrand testified that they never heard of the agreement until just before filing this suit. Williams testified that when he was examined as a witness on the trial of the claim suit, he then testified that such an agreement had been entered into. We think the court erred in not giving the charge.

If appellees had knowledge of such an agreement, or notice sufficient to put them on inquiry before the termination of the trial of the claim suit, they should have availed themselves of their defenses in that suit, and failing to do so, they can not resort to an injunction for relief. 1 High on Injunction, secs. 114-117. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 19, 1895.